Our next case for argument is Watson v. Societe Aeropostiale. Good morning, Your Honors. Louis Franeke, appearing for the appellant, Jerby. I would like to also split my argument with the counsel for Appellant Watson, if I may. And so I will be addressing essentially the abuse of decision on the discovery issue below, as well as specific jurisdiction. So if I may have questions in that regard. However, I think the point I'd like to make very briefly. And the other counsel will address what point? The general jurisdiction issue. All right. And agency, actually, even though they may obviously be intertwined. Yes. Briefly, I would like to point out the abuse of discretion issue below, where discovery was denied. And the reason it was so important is that the original motions were brought, opposition was brought, and also with a request for further discovery. For six months, further discovery took place. We needed to do a little bit more. And we made a motion to do a little bit more. And the judge says no. And everything will be submitted on what had happened six months earlier. So, in other words, we were not able to put in the evidence that was discovered, which is relatively significant, because the red blade, which I believe you see in the briefs, the red blade was discovered finally to have gone through American Eurocopter out of Texas, through to Hawaii, and then finally here to California. So that's why the abuse of discretion issue was a major point. However, it is, I believe, reasonably before, Your Honors, that we have shown that the red blade is, in fact, did go through American Eurocopter. On the specific jurisdiction issue, however, I think it's also very interesting because it somewhat parallels a case that Mr. Justice. And just to be clear, then, it went from the parent company to the U.S. subsidiary, and then it went out to some distributor or other company? No, not quite, Madam Justice McKeown. What happened was it went, the original helicopter had a, had the blade. It came through American Eurocopter. Then it went to a user in Hawaii who put it on their helicopter. Blue Hawaii, as a matter of fact. They fly around through the canyons. Then it was sold from them directly to the Canadian operation that was then configuring a different helicopter that was the one that actually crashed and that was going to be leased to the operation here in California, the Medevac helicopter. So the fact that it was sold to California was pretty secure, it seems to me. It is, but it's not. How did you avail yourself of California's jurisdiction? Mr. Justice Wallace, that's exactly the point in this case. We have many, many factors that go into it. That's a stream of commerce argument as far as the specific blade itself. I'll tell you, I think your general argument is a lot better than your specific one. Well, that's why I got the tough one. The reason I think that there is a consideration here is because of some of the issues that were raised in the Reynolds case that two of your justices just decided in 2006. The stream of commerce with more is one of the issues that must be looked at when you're looking at this worldwide marketing business plan that Eurocopter SAS has. They specifically want to market their products worldwide and they set up their distribution networks and their wholly owned subsidiaries in target countries. Very good business model. Makes perfect sense. By putting the red blade into the stream of commerce by itself, I would agree with you, Mr. Justice Wallace, but because there's a lot more that Eurocopter was doing, the distribution network, the wholly owned subsidiaries, and then you have that presence. It goes over the threshold of presence. And therefore, you are then in the State of California for purposes of jurisdiction. Similarly. But the claim, the big difference in general and specific, of course, is the claim needs to arise out of the forum-specific activity. And as Judge Cuddy, he has mentioned, you know, this little blade is flying around to a lot of places before it lands, so to speak, in California. So how does it arise out of the forum-specific conduct? I think the Snoney case is the case that I think gives good flavor. This is the California Supreme Court case. The arising out of means what are you doing in a particular jurisdiction as opposed to that specific part, how did it get here? The point I'm making by that is, is if there's a sufficient presence of a manufacturer in a particular jurisdiction and the case arises out of a product of theirs and the business they're doing in the jurisdiction, that satisfies the arise out of criteria. I used the example in my brief of the baseball player, which I think is illustrative. I only mentioned that you have four and a half minutes. Okay. I'll do it in five seconds. The baseball player is a good example. The reason I mention that is, is because baseball players from New York, say the Yankees, play the Giants a lot. So they're out here. Their business when they're here is playing baseball. But if that baseball player owns a restaurant in New York and a California resident travels to New York, eats there, gets food poisoning, he's not going to be able to sue that baseball player here in California because the reason the baseball player is here in California has nothing to do with his restaurant. But if he hits a ball and whacks a guy somehow and there is possibility of a tort action, then he would have jurisdiction. It all comes down to the facts. It comes down to what's really going on. And what's really going on is a Eurocopter SAS is doing business through its agent, American Eurocopter, in California, and the Blade is a part of that whole business that they are in. You're taking the position that the local company is the agent of the French company? Absolutely.  And pardon me for misnaming. Counsel. Good morning, Your Honors. Michael Harrington here for Appellant Mrs. Doreen Watson. She's the widow of the pilot of this medevac helicopter that crashed at Honey Lake on a return-to-base flight. I just want to point out that the burden of proof for us is pretty low. It's a prima facie standard of care proof, and facts are to be construed in our favor and things like that. And looking back at the district court's opinion, he really tracked the facts and the law pretty well. But then he got to agency, and then he went and started talking about used aircraft and maintenance services by independent operators. And what we're talking about here under general jurisdiction, specifically the Texas AEC is the general agent of the French EC, is that we're not talking about independent operators and used parts and used aircraft. We're talking about new products, new aircraft and new parts, and that the French have to have this domestic subsidiary to do what they do. For instance, the U.S. Code, Title 49, says that you have to be a U.S. citizen or a corporation to register an aircraft here. They had to have a U.S. presence, and the AEC person most knowledgeable said that in his deposition. He said, well, the French have to have us because they can't register aircraft here by themselves, among other things. So there's two or three pages of very detailed citations to the deposition evidence where the AEC person's most knowledgeable testified about how the French used them, and we don't have to have the day-to-day control proof that an alter ego has. We have a very low standard here. The standard is, for instance, cited in the city of Modesto. It's what's important to the hub of this wheel-and-spoke situation, and I've practiced aviation law since the late 80s. The emphasis on internal control seems to me to implicate not so much the general agent as the alter ego aspect of the problem because a lot of these quotations are directed to those two things jointly, and I think the opinion here with its emphasis on internal control, to me, they'd be talking about alter ego theory rather than general agent theory. Do you agree with that? Well, we really focus on agency because we don't have the French sitting in Texas with their board of directors completely overlapping all these other things. We do have the French sitting in Texas in the factory. No, I'm saying that would be required if you were pursuing an alter ego theory, but that's not your theory. My theory is general agency. Yeah, I know that. We agree with you. Thank you. That is happening. Thank you, Your Honor. I appreciate that. And so the French, through the Texans, basically came to California, like the R.J. Reynolds case talks about, and they sat down and made themselves at home here in California. And I would just like to point out that with this multinational aviation corporation structure that the Japanese, the Chinese, the French, the Europeans, the Brazilians are using, in this circuit they need to know that if they're going to do business here, like the way they're using the Texans, that they need to be held accountable for the consequences of their products failing. Thank you. Thank you very much. May it please the Court, Eric Strain for the defendant, Apolli Eurocopter. You can focus your time however you want, but I agree with Judge Cudahy that the agency question, to me, seems to be the closest question here. Okay. And I'll address the agency, but first I'd just like to address the evidence that the red blade is not before this Court, it wasn't considered by the district court, and is not properly considered by this Court. I guess one of their complaints is it should have been, and this discovery got short-circuited. That's correct. So why isn't that the case? I mean, normally you'd get the jurisdictional discovery and you'd consider it all. There was more than a year, almost a year and a half from the time the lawsuits were filed to the submission of the jurisdictional motions. The appellants had six months of jurisdictional discovery. They received two extensions by the district court. The evidence about the red blade didn't actually come about until a year after the last extension. So there's, you know, our position obviously is that they received plenty of opportunity to do this discovery. With the issue of the agency, the Ninth Circuit sets a very high standard for agency, and it's very fact-specific, and we believe it hasn't been met here. It hasn't been met, it wasn't met in the Doe case, it wasn't met in Wells Fargo, it wasn't met in Kramer. As Your Honor pointed out, a lot of the facts that they've been talking about actually go to the alter ego argument that really isn't being presented by appellants. With respect to the issue of general agency, my point on alter ego is that some of the things in the district court opinion, I think, specifically apply to alter ego theory. They don't necessarily apply to general agency. And I think they're being cited to defeat the possibility of general agency, whereas they really apply to alter ego. Like this emphasis on internal controls, that's not characteristic of a general agent. I agree, Your Honor, and those facts were dealt with in Kramer, which is the 1980 case cited in our brief. But I would agree. I think the big problem that you have to deal with is if this agency were not in existence, wouldn't the French company have to do all these things in the United States? It's on the count. No, Your Honor. They're all essential things to sales in the United States. The only thing to do in sales in the United States is to have this general agency. Well, first of all, Your Honor, the history of this aircraft shows that the aircraft can come into the country, be operated here, maintained here, and even receive spare parts here without any involvement of the American subsidiary, American Eurocopter. Secondly, Your Honor, the Eurocopter itself could obviously provide these services without having a presence here in France, so they operate through other third parties totally unrelated to Eurocopter itself. The representation agreement... Typically, though, it goes through AEC, then. The helicopter in this case did not, however, come through American Eurocopter. It went to Australia and then came in solely through third-party acts. So in this case, the... Why are you arguing on the specific? That doesn't go with the general agency question, does it? Well, the general agency issue, looking at whether the product would have to come through the distributor in order to get into the country, that was not the case here. So our position is the standard hasn't been met, and with respect to the general agency theory in particular, it shouldn't have any application where the product didn't come into the United States through the distribution network that is alleged to be the general agent. So you're saying that if we don't have a situation where the helicopter came in through the alleged agent, that you then can't get general jurisdiction if there is, in fact, an agency? Is that your position? If I understand your question correctly, Your Honor, the question is whether general jurisdiction over the agent could be imputed to the parent based on general agency where there... Even if the helicopter didn't come through that agent. Yes. Well, first of all, we would argue that there's no general jurisdiction over the agent, the purported agent in California in this case under the high standards set by the Ninth Circuit decisions, including the recent decision in Tuazon where American Eurocopter has nothing of the type of presence that R.J. Reynolds had, being virtually a fabric of society in Washington State. American Eurocopter is a Texas company with all of its employees there. They... That raises a question I'm a little confused about. Have they, has American Eurocopter waived its personal jurisdiction argument? American Eurocopter has not contested... Or not contested, which is the same as waiver under the rules. Correct. Under Rule 12, correct. Wow. American Eurocopter did not itself assert the jurisdiction defense. That independent decision by the independent company was made. It shouldn't be imputed back to Eurocopter. The issue that this Court still has to decide is whether American Eurocopter has constitutionally sufficient minimum contacts with the State of California that can then be imputed back to Eurocopter. But the waiver of one entity shouldn't be binding on the other. Because it seems to me that's where we're missing in this appeal. In a way, we're kind of missing that piece of the appeal. Everything's on the agency. And if you can't have, the agency's irrelevant if there isn't jurisdiction over AEC. Am I correct? That's absolutely correct. There must be a finding by the Court first that there are sufficient minimum contacts by AEC with the State of California before those contacts can be imputed back to the parent Eurocopter. Let me ask a question. The district judge indicated that the only connection from the subsidiary to the French corporation would be if it's an alter ego. That that's what the district court found? That's what the district court held. I believe that the district court made a finding that there wasn't any basis for imputing the contacts if they existed back to the parent company based on the alter ego, on there being no finding of an alter ego because of the history of the helicopter. Now, my question is, suppose there's no alter ego. Does that end the case, or is there another way through agency principles that the general corporation can be hauled into court because of its subsidiary? If the American subsidiary in Texas were found to have minimum contacts with California, and again, those contacts are totally unrelated to the helicopter entering California, so it would have to be a finding of general jurisdiction. If that finding is found, then the court would look to see whether there's a general agency between the two companies that could then impute the contacts to the parent. The district court said a subsidiary's contact with a foreign state would be sufficient to impute to its parent corporation only if the subsidiary is shown to be an alter ego of general agent or a general agent of its parent. Now, I take it that there's no question that you're raising that's being raised here as to alter ego. The question is whether there's a general agency. I believe that's correct, Your Honor. I don't believe that appellants are really contendering, contending alter ego, that the companies are really so intertwined that they shouldn't be considered separate companies. And I think the district court says Plaintiff doesn't allege that AE is an alter ego, but then it has a few more lines and it doesn't then use the word agency, so that's maybe why it's somewhat ambiguous. The Ninth Circuit opinions are clear that one or the other, alter ego or general agency, would be sufficient to impute the contacts back to the foreign corporation. Isn't there a considerable emphasis in the district court opinion on this business about control of internal affairs of the whatever it is that's in the United States? There is emphasis. Isn't that specifically something that's applicable to the owner ego theory, not to the general agency theory? Yes. That is correct, Your Honor. Those facts are. To that extent, isn't the, isn't that opinion a little misguided in its analysis? It is not, Your Honor, because the court, the district court also made the analysis as to what, as to the general agency in finding that this helicopter made it into the United States and was serviced and maintained in California without any involvement of the American subsidiary. So the district court did find on that basis. That's another issue, though, isn't it? That's the general agency. It has nothing to do with the internal controls. That's correct. They don't use the same accounting system and all that kind of thing. They do not. They're totally separate companies. There's no control by the French company over the American entity such that it. My point is that for the point of general agency analysis, that's irrelevant. That's correct, Your Honor. Okay. Did the district court examine whether there was actually jurisdiction over any AEC, whether it would meet the constitutional requirements? I don't believe that the district court found that there would be sufficient minimum contacts over AEC under general jurisdiction. There is a statement about relationship with California customers, but that is not a finding that it has a type of physical presence in the form to allow for general jurisdiction. So what the district court did was just rely on the agency, then? The district court. Or the lack of agency. The lack of agency and no specific jurisdiction. That's correct. No specific jurisdiction over either entity and a lack of agency relationship so that any contacts couldn't be imputed. Why did the district court talk about internal control? That's inconsistent with focusing on general agency, isn't it? My understanding is that the reason is because the district court did not consider the plaintiffs to be arguing the control issue below, so, therefore, the court felt it unnecessary to engage in a detailed alter ego analysis. Thank you. I see my time's up. If I could just make. Judge, he has another question. I'm not going to answer that last question. Sure. You say there's a necessary to consider alter ego theory even though it hasn't been raised? The court below, my understanding is, did not believe that the, despite the fact that these facts were being pushed as evidence of general agency, the court correctly found that they are not relevant to the general agency and that the plaintiffs weren't arguing alter ego. And so it looked specifically at the general agency test whether the subsidiary would have to do with the parent otherwise, excuse me, whether the parent would have to do with the subsidiary as otherwise doing. And it found that that test hadn't been met and that these other factors weren't relevant to that analysis, to the general agency analysis. Thank you. Thank you. You may have one minute for rebuttal. Your Honor, I'd like Your Honors to focus on the fact that what we're dealing with is not just a helicopter, but a helicopter that has multiple parts. The original helicopter that was ever sold to Australia, I believe originally, probably now has 80 to 85 percent different parts on it, different engine, different rotor blades, et cetera. So we're focusing on what part realistically is the one that is involved. And if I may touch on the agency argument for a second. The agency versus alter ego theories in this particular case have an overlying question. And that is, as Mr. Justice Cudahy asked, what would happen if American Eurocopter didn't exist? American Eurocopter could be an agent, but in this case they have a controlled contract which France controls them. So I think you have alter ego and you also have agency at the same time. But for our purposes of jurisdiction, the question is take American Eurocopter out of the equation. France has to then come in here and do everything that AEC does. Thank you. We appreciate your argument. The case just argued of Watson versus Aerospatiale is submitted. Next for argument is Lehman versus Robinson.
judges: Wallace, Cudahy, McKeown